■ US Express Leasing, Inc., Appellant, v Elite Technology (NY), Inc., et al., Respondents. [928 NYS2d 696]—

Plaintiff, US Express Leasing, Inc. (USXL), is a leasing and financing company that provides financing for equipment dealers, vendors and their customers. Defendant, Elite Technology, Inc. (Elite), sells business equipment such as copiers, shredders and scanners, and arranges for the leasing, rental and financing of such equipment. Defendant Michael Pavone is an officer and representative of Elite who dealt with USXL on Elite's behalf. In November 2006, USXL and Elite entered into a "Master Purchase Agreement & Assignment of Leases" (MPA) under which USXL would purchase equipment leases from Elite and in turn be entitled to collect the payments under the lease. The MPA defines leases as "lease, rental or finance agreements for equipment and/or software sold or distributed by [Elite] (the "Equipment") to certain qualified customers (each a "Customer") of [Elite]." Further, the MPA expressly provides that "[a]ll documentation for Leases will name [Elite] as the owner for such Leases," and "[i]mmediately upon the execution and delivery of the final documents by Customer, [Elite] will assign and sell all of its rights, title and interest in and to the Lease, including the Lease Documents and the Equipment, to USXL on a non-recourse basis."

Under the MPA, Elite also agreed to certain representations and warranties, including, that all documents executed by Elite's customers in connection with any lease are valid, legal, and genuine. The MPA further required Elite to agree that with regard to leases, it had no knowledge of any fact or circumstance that would impair the validity or collectability under any lease.

In April 2007, Pavone informed USXL that nonparty National International Marketing Groups, Inc. (National), wished to lease a photocopier system over a 63-month term. Pavone provided USXL with National's phone number, business address, and the name, address, and Social Security number for National's Personal Guarantor and President, John Samuel. The record reflects that USXL engaged in its own investigation of National,

including performing a Google search, checking with the New York Secretary of State regarding the listing for National, and performing a credit check on Samuel. According to USXL's business notes, the Secretary of State did not have a listing for National, and the address search returned the name of a different company. However, USXL was able to confirm that National was incorporated in Delaware, and it received a positive credit history report on Samuel. USXL then requested National's finances from Elite. Elite subsequently provided USXL with an unsigned "Independent Accountants' Report," which reflected that National's financials were in good working order. According to Elite, this was the only documentation it had on National, and USXL accepted this without further question.

Based on this information, USXL entered into a rental agreement directly with National for the lease of photocopier equipment, which USXL had purchased from Elite for $96,643.21. The rental agreement expressly required National to agree that USXL was the owner of the equipment. Samuel signed the rental agreement on National's behalf and as a personal guarantor. Elite was not named or referenced in the rental agreement between USXL and National. Thereafter, National never made any payments under the rental agreement. USXL then gave notice to Elite that it had breached its representations and warranties under the MPA and demanded that Elite repurchase the copier, as it was obligated to do. Elite refused, contending that the rental agreement between USXL and National did not fall under the MPA, and thus the warranties under it did not apply.

USXL commenced this action against Elite alleging breach of representations and warranties, and against Elite and Pavone for fraud and negligent misrepresentation. Elite and Pavone moved to dismiss for failure to state a cause of action. The motion court granted the motion as to the breach of representations and warranties and negligent misrepresentation claims, but denied the motion as to the fraud claim. However, upon reargument, the motion court granted defendants' motion to dismiss the fraud claim.

"Dismissal of a complaint pursuant to CPLR 3211 (a) (1) is warranted where 'the documentary evidence submitted conclusively establishes a defense to the asserted claims as a matter of law' " (*150 Broadway N.Y. Assoc., L.P. v Bodner*, 14 AD3d 1, 5 [2004], quoting *Leon v Martinez*, 84 NY2d 83, 88 [1994]). Here, the written MPA contradicts USXL's allegations supporting its claim for breach of representations and warranties. According to the MPA, which contains the warranty clauses at issue in this case, the lease must list Elite as the equipment owner.

However, the rental agreement between USXL and National listed USXL as the equipment owner, and therefore did not come within the MPA at all. Further, USXL did not purchase a lease, and all the rights thereunder, from Elite; rather, it purchased the actual equipment. The MPA only applies if the lease, as opposed to the equipment, is purchased. USXL then entered into a separate agreement, which did not involve Elite, with National. Thus, the rental agreement never qualified as a lease under the MPA, and therefore the representations and warranties in the MPA were never triggered.

The complaint also fails to state a cause of action for negligent misrepresentation. To make out a prima facie case of negligent misrepresentation, the plaintiff must show "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information" (*J.A.O. Acquisition Corp. v Stavitsky*, 8 NY3d 144, 148 [2007]). USXL alleges no facts to indicate the type of special relationship of trust or confidence that would give rise to a duty on the part of Elite or Pavone to impart correct information (*see Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 180 [2011]; *Kimmell v Schaefer*, 89 NY2d 257, 263 [1996]; *Dobroshi v Bank of Am., N.A.*, 65 AD3d 882, 884 [2009], *lv dismissed* 14 NY3d 785 [2010]). Nor does USXL contend that Elite possessed any specialized knowledge or expertise as it pertained to the finance and leasing industry (*Mandarin Trading Ltd.*, 16 NY3d at 180; *Kimmell*, 89 NY2d at 263). A special relationship does not arise out of an ordinary arm's length business transaction between two parties (*Mateo v Senterfitt*, 82 AD3d 515, 516-517 [2011]; *Dembeck v 220 Cent. Park S., LLC*, 33 AD3d 491, 492 [2006]).

USXL's second cause of action should not have been dismissed. To make out a prima facie case of fraud, plaintiff must allege "representation of material fact, falsity, scienter, reliance and injury" (*Small v Lorillard Tobacco Co.*, 94 NY2d 43, 57 [1999]).* On a motion to dismiss, pursuant to CPLR 3211, the complaint is to be afforded a liberal construction; the court accepts the facts as alleged in the complaint as true, accords the plaintiff the benefit of every possible inference, and determines only whether the facts as alleged fit within any cognizable legal theory (*Leon*, 84 NY2d at 87-88). There is no dispute here that defendants falsely misrepresented a material fact in the form of

---

* In its briefing, defendant appears to have confused the elements of negligent misrepresentation, which requires the presence of a special relationship, with the elements of fraud, which does not.

an inaccurate accountant's report, and that plaintiff relied on it to its detriment resulting in significant monetary loss. The resolution of this motion turns primarily on whether the issue of reasonable reliance can be resolved as a matter of law based on the evidence, or whether plaintiff, for pleading purposes, has met its burden.

The reasonableness of plaintiff's reliance finds some support in the fact that, from the information Elite provided, USXL was able to conduct a credit history check of National's personal guarantor, and determine that National was incorporated in Delaware. USXL also obtained an accountant's report from Elite, which showed that National's finances were in good working order. Furthermore, the parties had some business dealings with each other prior to the receipt of the accountant's report, though the extent of their dealings cannot be determined from the submissions on this motion.

On the other hand, the reasonableness of USXL's reliance could be undermined by its acceptance of an unsigned accountant's report and its awareness of an address search showing the name of a company other than National. We conclude, however, that these factors do not, in this case, entitle defendants to dismissal of the fraud claim based on documentary evidence. Indeed, there is a strong inference in USXL's pleadings, considered as a whole, of an active scheme by defendants to fraudulently induce USXL to enter into a fictional transaction. Any issues raised by defendants as to the reasonableness of USXL's actions can be explored at later stages of the proceedings (*Knight Sec. v Fiduciary Trust Co.*, 5 AD3d 172, 173 [2004] [finding that the question of the plaintiff's reasonable reliance on the defendant's misrepresentations implicated factual issues inappropriate for resolution on a CPLR 3211 motion]). Concur—Andrias, J.P., Saxe, Friedman, Moskowitz and Richter, JJ. **[Prior Case History: 2009 NY Slip Op 30474(U).]**